This is an unemployment compensation case.
Claimant's employment was terminated in August 1984. She applied for benefits under our unemployment compensation law and was denied. She appealed this denial to the Department of Industrial Relations. The Appeals Referee reversed this denial and awarded her benefits, subject to a seven-week disqualification for misconduct connected with her work per §25-4-78 (3)c., Code of Alabama 1975. The Board of Appeals affirmed this decision, and the claimant appealed to the circuit court pursuant to § 25-4-95. After trial de novo in the circuit court, the claimant was again awarded benefits subject to a seven-week disqualification per § 25-4-78 (3)c.1. The claimant appeals from that disqualification.
When an unemployment compensation case is tried orally before the court sitting without a jury, the court's findings are presumed correct and will not be reversed on appeal unless they are clearly contrary to the great weight of the evidence. Paynev. Department of Industrial Relations, 405 So.2d 1322
(Ala.Civ.App. 1981).
Claimant was employed at ARCBC Adult Activity Center (Center) in the position of Functional Living Instructor. Her duties included teaching basic self-help and household skills to mentally retarded adults. The class with which she was charged was composed of mentally retarded adults (clients) with I.Q.'s ranging from nineteen to thirty-five. Testimony indicated that this I.Q. range was roughly equivalent to that of children two and one-half years of age to seven years of age.
On appeal the claimant argues that the conduct for which she was discharged does not constitute "misconduct" under § 25-4-78
(3)c. She argues that her conduct was not "deliberate, willful, or wanton" as required by that definition of "misconduct" provided in, among other cases, Davis v. Department ofIndustrial Relations, 465 So.2d 1140 (Ala.Civ.App. 1984). In that case, this court was construing § 25-4-78 (3)b, not §25-4-78 (3)c. We recognize that neither subsection b or c of §25-4-78 (3) contains an express requirement that the misconduct resulting in disqualification be "deliberate." Under the circumstances of this case, we find it unnecessary to determine whether one may be disqualified *Page 1248 
under either subsection for less than deliberate misconduct. We conclude that the claimant's actions clearly constitute misconduct as defined in Davis, supra.
The allegations of misconduct stem from activities which occurred on August 29, 1984. On that day, the claimant and another instructor took their classes, a total of fourteen mentally retarded adults, on a walk. Apparently, the purpose of the walk was to purchase ice cream and cokes as treats for the clients. Briefly summarized, the record indicates that the allegations of misconduct with which the claimant was charged included: (1) taking clients off the Center's property without proper authorization, (2) failing to properly and adequately supervise her clients during their walk, resulting in endangerment to both their safety and health; and (3) ignoring established policies of the Center, resulting in endangerment to her clients.
At trial, the testimony of the claimant was in direct conflict with that of the Director, Mrs. Haber, and other Center personnel. The claimant stated that she had permission to take the class on the walk. Mrs. Haber testified that she specifically denied the request, although she did authorize a "short walk" on the Center's property. Mrs. Haber's testimony was supported by that of another instructor. The claimant testified that during the walk she followed established safety procedures and that no unusual incidences occurred. Testimony from Mrs. Haber and Center personnel flatly contradicts that assertion. The route taken for the walk led the group to a rather busy four-lane highway. From a distance, an instructor saw a client narrowly miss being hit by a dump truck when she fell down. Neither the claimant nor her cohort, who were allegedly walking ahead of the group, saw the fall. Another client had to help the fallen client to her feet. The testimony also indicated that many of the clients were obese. The temperature at the time was in the nineties. Many of the clients were "huffing and puffing" well before the group arrived at "Grants," where they had ice cream and cokes.
Mrs. Haber began to worry when the group, which had started out at 10:30 A.M., had not returned by 11:50 A.M. One epileptic client had needed medication at 11:00 A.M. Some of the other clients also needed strict and timely medications. These, too, would be late. She set out to find them. When she located the group, she observed all fourteen clients, along with two others, sitting in the rear four seats of a closed, unairconditioned van in front of a pharmacy. The claimant and her fellow instructor were inside the pharmacy. When the van's door was opened, Mrs. Haber observed that all of the clients were perspiring profusely. One of these was known to have high blood pressure. Two female clients were sitting in the laps of two male clients. One of these couples was known to have particular problems controlling their sexual impulses. Another client, the one that had not received his medication on time, was having epileptic seizures. These seizures continued while Mrs. Haber returned the group, in two separate trips, to the Center. Center policy did not allow sixteen clients in one van at a single time.
The only explanation offered by the claimant for her actions was contradicted by the testimony of another Center employee. The claimant testified that she intended to transport the group back to the Center in the van. Allegedly, she only stepped inside the pharmacy to obtain the keys from a Center employee who was inside. This, she stated, took no more than five minutes. The employee, however, testified that neither the claimant nor the other instructor asked for the keys. She also stated that they had been inside the pharmacy for more than twenty minutes, apparently, looking at baby items. (The claimant's fellow instructor was pregnant at the time.)
The testimony also indicated that the claimant had been aware that her clients needed strict supervision, that her clients had medical problems which required strict and timely medication, and that the medications were late on the day in question. The claimant had been warned at least one *Page 1249 
time earlier about leaving her clients unsupervised.
The trial court had the duty to resolve the conflicts in the testimony and determine the weight and inferences to be drawn from the evidence. Payne, supra. This it did. Whether the claimant should have been totally disqualified under § 25-4-78
(3)b or partially disqualified under § 25-4-78 (3)c was also for the trier of fact to determine. Payne, supra; Department ofIndustrial Relations v. Jaco, 337 So.2d 374 (Ala.Civ.App. 1976). From the record before us, we cannot say that the finding of the trial court was clearly wrong.
The decision of the trial court disqualifying the claimant from unemployment benefits for seven weeks pursuant to §25-4-78 (3)c is amply supported by the evidence. Its judgment is affirmed.
AFFIRMED.
BRADLEY and HOLMES, JJ., concur.